UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| PAUL R. VILLELLA, | : | |
| Plaintiff, | : | |
| | : | CIVIL ACTION NO. |
| v. | : | 3:07-cv-1442 (JCH) |
| | : | |
| MICHAEL J. ASTRUE | : | |
| COMMISSIONER, | : | |
| SOCIAL SECURITY ADMINISTRATION | : | NOVEMBER 21, 2008 |
| Defendant. | : | |

**RULING RE: PLAINTIFF'S OBJECTIONS TO THE
MAGISTRATE JUDGE'S RECOMMENDED RULING [Doc. No. 28],
PLAINTIFF'S MOTION TO REVERSE [Doc. No. 15],
DEFENDANT'S MOTION TO AFFIRM [Doc. No. 19],
AND DEFENDANT'S MOTION TO STRIKE [Doc. No. 32]**

**I.    INTRODUCTION**

Plaintiff, Paul Villella, brings this action pursuant to § 1631(c)(3) of the Social

Security Act, as amended, 42 U.S.C. § 1383(c)(3), requesting review of a final decision

by defendant, the Commissioner of Social Security ("Commissioner"), that Villella is not

disabled and therefore not entitled to disability insurance benefits ("DIB") and

Supplemental Security Income ("SSI").

On August 26, 2008, Magistrate Judge Holly B. Fitzsimmons issued a

Recommended Ruling [Doc. No. 23] denying Villella's Motion to Reverse the Decision

of the Commissioner and granting the defendant's Motion to Affirm the Decision of the

Commissioner.  Absent objection, on September 29, 2008, this court adopted, affirmed,

and ratified the Recommended Ruling [Doc. No. 27].

On October 1, 2008, the court granted Villella's Motion to Reopen the case, and

on November 21, 2008 the court granted his Motion to Vacate Judgment.

Consequently, now pending are Villella's Motion to Reverse the Decision of the

Commissioner [Doc. No. 15], the Commissioner's Motion to Affirm the Decision of the Commissioner [Doc. No. 19], and the Commissioner's Motion to Strike [Doc. No. 32]. Further pending is Villella's Objection to the Recommended Ruling [Doc. No. 28], which argues that the Recommended Ruling should not be adopted because the Magistrate Judge made a number of serious factual and legal errors.

For the reasons stated below, the plaintiff's Objections to the Magistrate Judge's Recommended Ruling [Doc. No. 28] are **OVERRULED**, in part, and **SUSTAINED**, in part. Accordingly, the Recommended Ruling [Doc. No. 23] is **AFFIRMED**, **ADOPTED**, and **RATIFIED**, in part, as discussed herein. Villella's Motion to Reverse [Doc. No. 15] is **DENIED**, and the Commissioner's Motion to Affirm [Doc. No. 19] is **GRANTED**. Finally, defendant's Motion to Strike [Doc. No. 32] is **DENIED AS MOOT**.

## II.    STANDARD OF REVIEW

As a preliminary matter, a district court reviews, de novo, those portions of a magistrate judge's recommended ruling to which an objection is made. The court may adopt, reject, or modify, in whole or in part, the magistrate judge's recommended ruling. See 28 U.S.C. § 636(b)(1)(c); Fed. R. Civ. P. 72(b)(3).

In review of a Social Security disability determination, a court will set aside the decision of an administrative law judge ("ALJ") "only where it is based upon legal error or is unsupported by substantial evidence." Balsamo v. Chater, 142 F.3d 75, 79 (2d Cir. 1998). As the Supreme Court has instructed, substantial evidence means more than a "mere scintilla." Richardson v. Perales, 402 U.S. 389, 401 (1971) (internal quotation and citation omitted). Rather, substantial evidence is "such relevant evidence

as a reasonable mind might accept as adequate to support a conclusion." Id. Further, the substantial evidence rule also applies to inferences and conclusions that are drawn from findings of fact. See Gonzalez v. Apfel, 23 F. Supp. 2d 179, 189 (D. Conn. 1998). In its review, a court may not decide facts, re-weigh evidence, or substitute its judgment for that of the Commissioner. See Reyes v. Harris, 486 F. Supp. 1063, 1067 (S.D.N.Y. 1980). Under this standard of review, absent an error of law, a court must uphold the Commissioner's decision if it is supported by substantial evidence, even if the court might have ruled differently. See Eastman v. Barnhart, 241 F. Supp. 2d 160, 168 (D. Conn. 2003).

## III.    BACKGROUND

### A.    Procedural History

Villella filed an application for DIB and SSI on November 18, 2003, alleging that he became disabled on September 1, 2000. Transcript of Proceedings ("Tr.") 57. Villella's claim was initially denied on June 23, 2004, and denied on reconsideration on September 23, 2004. Tr. 26-31, 506-512. Villella subsequently requested an administrative hearing, which was held before ALJ Deirdre Horton on September 27, 2005. Tr. 600-28.[1] On February 21, 2006, the ALJ issued a decision in which she found that Villella was not disabled. Tr. 16-25.

On March 27, 2006, Villella filed a request for review of the ALJ's decision. Tr. 13-15. On August 10, 2007, the Appeals Council upheld the denial of benefits,

---

[1]As noted in the Recommended Ruling, the transcript of the September 27, 2005 hearing before the ALJ is incorrectly numbered in the Record as pages 560-88. For the Recommended Ruling, the Magistrate Judge changed the transcript's numbering to 600-28. The corrected numbers will be used here.

rendering the ALJ's decision the final decision of the Commissioner.  Tr. 7-10.

On September 24, 2007, Villella filed the current action in the District of Connecticut, and on August 26, 2008, Magistrate Judge Fitzsimmons issued the Recommended Ruling.  Absent objection, this court adopted, affirmed, and ratified the Recommended Ruling on September 29, 2008.  On October 1, 2008, Villella filed a Motion to Vacate Judgment, based on his Objection to the Recommended Ruling.  The court now addresses that Motion and the Objection upon which it is based.

B.      Summary of Facts

Paul Villella was born on August 28, 1949, and was fifty-six years old when the ALJ issued her decision in February 2006.  Tr. 57.  He attended college but has no degree.  Tr. 610.  From 1989 until September 2000, Villella worked as a case manager at a men's shelter.  Tr. 610-11.  He left the shelter in 2000 after a conflict with the shelter's new director.  Id.

Villella claims that he became disabled in 2000 due to, inter alia, chronic back pain, leg pain, pelvis pain, shoulder pain, carpal tunnel syndrome, pain and complications from hepatitis B and C, and coronary artery disease.  When he applied for benefits in November 2003, Villella stated that he spent his days attending AA meetings and looking for inexpensive housing.  Tr. 87.  He was unable to stand for long periods, lift heavy objects, or do heavy work.  Id.  Villella stated that he could, however, fold clothes, vacuum, and sweep.  Tr. 89.  He could also walk, drive, and ride in a car; go out alone; shop without help; pay bills; count change; read; and go to tag sales.  Tr. 89-91.

Villella completed a supplementary report in February 2004.  Tr. 135-141.  In this

report, he described his health problems as major back pain, pinched nerves, hepatitis C, heart problems, and Bell's Palsey. Tr. 135. Specifically, he reported that he was unable to work because of pain and lack of sleep caused by his ailments. Id. Further, he stated that he felt sad, had lost interest in activities he used to like, felt guilty or worthless, and had experienced changes in appetite and a loss of energy. Tr. 137. Villella also reported that he could often sit or stand, and sometimes walk, bend, lift, grasp, push, and pull. Tr. 138.

Dr. Martin Perlin, Villella's primary physician, has treated Villella since October 1997. Tr. 147. Dr. Perlin assessed Villella's residual functional capacity ("RFC") in two forms completed in February 2004. In the first form, Dr. Perlin noted that Villella could sit, stand, and walk for one hour each during an eight-hour workday. Tr. 144. He also noted that Villella could frequently lift and carry up to five pounds and occasionally lift and carry up to 20 pounds. Tr. 145. In the second form, Dr. Perlin altered his opinion and stated that Villella could sit for one hour in an eight-hour workday, and never stand or walk. Tr. 153. He stated that Villella could occasionally lift and carry up to five pounds, but never anything heavier. Tr. 154. Dr. Perlin also noted that Villella was not significantly limited in any area of mental functioning, including understanding and memory; sustained concentration and persistence; social interaction; or adaptation. Tr. 156-157.

In September 2004, Dr. Mary Malone, a physician employed by the Social Security Administration (the "Administration"), reviewed all evidence then in the Record and concluded that Villella could occasionally lift and carry 50 pounds; could frequently lift and carry 25 pounds; and could stand, walk, and sit for about six hours in an eight-

hour day.  Tr. 161.  Dr. Malone acknowledged that her conclusions differed from Dr. Perlin's, but noted that Dr. Perlin did not support any of the limitations he had specified. Tr. 166.

C.  Villella's Medical History

Villella's medical history – including his symptoms, the effects of those symptoms, and the treatment he received – is described, in great detail, in the Recommended Ruling.  Only the most relevant facts are repeated here.

Dr. Perlin has treated Villella since 1997 for, inter alia, chronic back pain, chronic shoulder pain, chronic pinched nerves, hepatitis C, heart disease, and lack of sleep. Dr. Perlin indicates that he saw Villella approximately monthly (Tr. 147), but the Record does not contain documents from monthly visits.  See Tr. 127-134, 142-148, 149-159, 244-287, 501.  To the contrary, it appears from the Record that on numerous occasions during the relevant period, Villella went two or three months without seeing Dr. Perlin. Id.

It appears from the Record that, during the time he treated Villella, Dr. Perlin prescribed for Villella a series of medications, including narcotic pain medication, medication for hypertension and acid reflux, blood thinners, and sleep medication. There are no medical records from Dr. Perlin, however, indicating when he began prescribing any of these medications, nor any records specifically evaluating the effectiveness of these medications.

In addition to his visits to Dr. Perlin, Villella frequently visited the emergency rooms ("ERs") of several area hospitals throughout 2001, 2002, and 2003, with complaints of chest pain, back pain, or sleeplessness.  Recommended Ruling ("RR") at

6-7. The vast majority of these visits ended without treatment: Villella either left without being seen because he felt better, or left after being instructed to consult his primary physician. Id.

Villella had his gallbladder removed sometime in 2002. Tr. 214. There are no documents from this surgery in the Record. Following the gallbladder procedure, Villella began abusing narcotic pain medication. Id. It is unclear from the Record exactly who initially prescribed the narcotic pain medication, when Villella's dependency began, or whether Dr. Perlin diagnosed the dependency. Villella has a prior history of cocaine and heroin abuse, but claims to have been sober for 16 years before the onset of his disability. Tr. 114.

During a January 8, 2004, visit to Norwalk Hospital's ER, Villella expressed suicidal ideation. The following day, he was admitted to Norwalk Hospital to undergo an opiate detoxification program in an attempt to reduce his dependency on pain medication. During the program, however, Villella denied addiction and was ambivalent to treatment. Tr. 214-27, 288-333. He refused to take non-narcotic pain medication. When he was informed that he would not receive narcotic pain medication, he signed himself out of the program against medical advice, stating that he "knew more about addiction than anyone else on the [detoxification] unit." Tr. 214.

Throughout 2004 and 2005, Villella continued to see Dr. Perlin and make short visits to the emergency rooms of area hospitals. RR at 11-12. He was told on at least two occasions by ER staff that he was addicted to pain medication (Tr. 414-20, 421-31). On other occasions, ER staff questioned whether Villella was "drug-seeking" (Tr. 443) or refused to give him narcotic pain medication (Tr. 480). There is no evidence in the

Record that Villella underwent any substance abuse treatment related to his dependency on narcotic pain medication other than his brief stay in the detoxification program at Norwalk Hospital.

      C.     ALJ's Disability Determination

The Social Security Act provides that every individual who suffers from a disability is entitled to disability insurance benefits.  <u>See</u> 42 U.S.C. § 423(a)(1).  A disability is defined as, "an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).

Under the Social Security Act, the Social Security Administration (the "Administration") has established a five-step, sequential evaluation process for determining whether an individual is disabled.  <u>See</u> 20 C.F.R. § 416.920(a).  The steps are followed in order.  If at any step it is determined that the claimant is or is not disabled, the evaluation ends without proceeding to the next step.

At step one, the Commissioner must determine whether the claimant is engaged in substantial gainful activity.  <u>See</u> 20 C.F.R. § 416.920(b).  Generally, if an individual has earnings from employment or self-employment above a level set out in the regulations, it is presumed that that individual has demonstrated the ability to engage in substantial gainful activity.  <u>See</u> 20 C.F.R. §§ 416.974-5.  If the claimant is not engaged in substantial gainful activity, the evaluation proceeds to step two.

At step two, the Commissioner must determine whether the claimant has a medically determinable impairment that is "severe" or a combination of impairments that

is "severe." See 20 C.F.R. § 416.920(c). An impairment or combination of impairments is "severe" within the meaning of the regulations if it significantly limits an individual's ability to perform basic work activities. If the claimant has an impairment or combination of impairments that is "severe," the evaluation proceeds to step three.

At step three, the Commissioner must determine whether the claimant's impairment or combination of impairments meets or medically equals the criteria of an impairment listed in the appendix to the regulations. See 20 C.F.R §§ 416.920(d), 416.925-6. If the claimant's impairment or combination of impairments meets or medically equals the criteria of a listing, and meets a duration requirement, the claimant is disabled. If not, the evaluation proceeds to step four.

At step four, the Commissioner must determine the claimant's residual functioning capacity ("RFC") and then determine whether the claimant has the RFC to perform the requirements of the claimant's past relevant work. See 20 C.F.R. §§ 416.920(e), 416.920(f). If the claimant has the RFC to perform past relevant work, the claimant is not disabled. If the claimant is unable to perform any past relevant work, the evaluation proceeds to the fifth and last step.

 At step five, the Commissioner must determine whether the claimant is able to perform any other work, taking into consideration the claimant's RFC, age, education, and work experience. See 20 C.F.R. § 416.920(g). If the claimant is not able to perform other work and meets the duration requirement, the claimant is disabled.

The burden of establishing a disability is on the claimant. Once the claimant meets the burden for the first four steps of the disability evaluation, however, the burden then shifts to the Commissioner for the fifth step. See Balsamo, 142 F.3d at 80.

In the present case, in the February 21, 2006 decision, the ALJ found that Villella satisfied the first two steps of the disability evaluation. Tr. 24. The ALJ then found that Villella's impairments did not meet or equal the severity of any impairment listed in the appendix to the regulations. Id. At step four, the ALJ assessed Villella's RFC and found that he is able to perform his past work as a case manager. Id. Consequently, the ALJ concluded that Villella is not disabled. Id.

## IV.    ANALYSIS

The Magistrate Judge's 35-page Recommended Ruling comprehensively reviews the ALJ's decision and concludes that substantial evidence in the Record supports the Commissioner's determination that Villella was not disabled at any time relevant to the ALJ's decision. Villella objects to the Recommended Ruling on the grounds that: 1) the Recommended Ruling makes a number of serious factual errors; and 2) the Recommended Ruling makes a number of serious legal errors. The allegations of factual error and legal error are addressed separately.

### A.    Alleged Factual Errors in the Recommended Ruling

Villella's objection includes a numbered list of 24 alleged errors of fact contained in the Recommended Ruling. For reasons of clarity, these alleged errors will be addressed, by number, in the order presented on pages four through 13 of Villella's Objection.

1. Villella contends that the Recommended Ruling inaccurately describes a February 2004 client supplement report. RR at 3-4, describing Tr. 140. The Recommended Ruling describes the report as stating that, in February 2004, Villella could lift 20 pounds and frequently lift ten pounds. RR at 3-4. Villella argues, however,

that report describes the exertional activities Villella had to perform in past work, not what he was able to perform at the time of the report. Tr. 140. The court agrees that the report is inaccurately described. Consequently, this objection is sustained, and the court does not adopt the Recommended Ruling's description of the February 2004 client supplement report.

2. The Recommended Ruling uses the term "consultative physician" to describe a physician who, in September 2004, completed a RFC assessment for Villella. RR at 5. Villella notes that, in the Social Security context, the term "consultative physician" specifically describes a doctor who is hired by the Administration's Disability Determination Services ("DDS") to actually examine a claimant and make a RFC assessment. In this case, however, Villella argues that the September 2004 RFC assessment was not completed by a "consultative physician," but by a DDS physician who reviewed the medical records without examining Villella. The court agrees that the term "consultative physician" is misused, and therefore this objection is sustained. The court does not adopt the Recommended Ruling's description of the physician who completed the September 2004 RFC assessment.

3. The Recommended Ruling states, "Only two records from 2005 list current medications plaintiff was then taking." RR at 5. The context of this statement makes clear that the court was referring to records from Villella's treating physician, Dr. Perlin. Id. Villella contends that, "the Administrative Record is replete with records of the medications which Mr. Villella takes, including many from 2005." Objection at 5. He then cites 14 specific records that purportedly contain reference to medications Villella was taking. While the documents Villella cites do mention various medications, the

documents are either prescriptions for medications (which do not purport to be complete lists of current medications Villella was then taking) or records from hospital emergency departments.  No record Villella references is from the office of Dr. Perlin.  Therefore, the Recommended Ruling's statement is not erroneous.  The objection is overruled.

4.  The Recommended Ruling says of Villella's January 2004 hospitalization, "When [Villella] was informed that he would not receive narcotic pain medication, he signed himself out of the program against medical advice."  RR at 8.  Villella argues that this statement is erroneous because "during his hospitalization, Mr. Villella was given narcotic pain medications, including Oxycontin, OyIR, and Methadone."  Objection at 5.  Villella's contention, however, is irrelevant.  That Villella was given narcotic pain medications at some time during his hospitalization does not negate the fact that he signed himself out of the program against medical advice after being told he would not receive narcotic pain medication.  Therefore, this allegation of error is unfounded.  The objection is overruled.

5.  The Recommended Ruling states that Dr. Perlin completed two medical assessment forms in connection with Villella's claim (Tr. 147, 158), and "[i]n the first form, Dr. Perlin stated that he was treating plaintiff only in routine office visits."  RR at 9.  Villella claims this is an error, and that the forms actually reflect that Dr. Perlin was also the treating physician during Villella's hospitalizations and in-patient treatment.  It is not at all clear, however, that the forms so indicate.  The forms ask the physician to list hospitalizations and in-patient treatment of the claimant within the last five years, but do not ask whether the physician was the treating physician during these incidents.

Absent other evidence, there is no reason to assume that Dr. Perlin treated Villella during his visits to area hospitals. Consequently, the Recommended Ruling is not erroneous. The objection is overruled.

6. The Recommended Ruling states, "On March 24, 2004, Dr. Perlin evaluated plaintiff for chronic back pain. Treatment notes indicate mild pain. Plaintiff had full flexion, extension, rotation, and lateral bending without apparent pain or discomfort." RR at 9-10. Villella argues that this "minimizes" his pain because it implies that Dr. Perlin "repeatedly" reported that Villella's pain was mild. Objection at 5. The Recommended Ruling is quite clear, however, that the notes indicating mild pain were in reference to the March 24, 2004 evaluation. Thus, this allegation of error is without merit. The objection is overruled.

7. The Recommended Ruling notes that Dr. Perlin referred Villella to a hand surgeon for treatment of Carpal Tunnel Syndrome, but indicates that, "[t]he Record contains no evidence that plaintiff followed up on the referral." RR at 11. Villella argues that Dr. Perlin reported that Villella consulted the hand surgeon, Dr. Kavookjian, but Dr. Kavookjian could not operate because of the risks caused by Villella's other illnesses. In support of this argument, Villella cites page 251 of the transcript. This document, however, contains only the words: "Referrals: Kavookjian, Kaik - Hand Surgeon." Tr. 251. It makes no report of Villella visiting Dr. Kavookjian, nor of Dr. Kavookjian's alleged inability to operate.

However, page 244 of the Record, Dr. Perlin's treatment notes from a July 31, 2003 visit by Villella, contains the following: "Pt state's [sic] 'My platelet count was too low to perform Surgery [sic] on Left Hand with Dr. Kavookjian." This statement, a

statement by Villella to Dr. Perlin recorded in Dr. Perlin's treatment notes, is not supported by any other evidence in the Record. There are no documents from Dr. Kavookjian, no indication that Dr. Perlin ever verified Villella's statement, and no indication that either Villella or Dr. Perlin ever followed up with Dr. Kavookjian. As a result, the Recommended Ruling is not erroneous. The objection is overruled.

8. Villella's eighth allegation of error is a repetition of his sixth, and is likewise without merit. The objection is overruled.

9. The Recommended Ruling states that, "no medical records support a diagnosis of spinal stenosis." RR at 21. Villella argues that this is erroneous, and cites numerous documents in the Record that allegedly support such diagnosis. One such record, Tr. 131, is Dr. Perlin's treatment notes from March 24, 2004. On that date, Dr. Perlin gave Villella a lumbar spine examination, and assessed Villella's condition as "Spinal Stenosis Lumbar." Tr. 131. The Record, however, contains no medical records supporting this diagnosis. That is, there were no clinical findings of a narrowing of the spinal canal. Therefore, this allegation of error is without merit, and the objection is overruled.

10. The Recommended Ruling notes that, from the Record, it appears that Villella was examined by Dr. Perlin for back pain only once between 1997-2005. RR at 21. It then states that, "The ALJ is permitted to draw a negative inference from [this] lack of treatment." Id. The Recommended Ruling then cites a Second Circuit ruling which held that the Commissioner can properly attribute significance to a claimant's failure to seek medical attention. See Arnone v. Bowen, 882 F.2d 34, 39 (2d Cir. 1989). Villella argues, however, that in his case there was no lack of treatment. Specifically,

he points out that he was taking medications for pain prescribed by Dr. Perlin throughout the entire period encompassed by the Administrative Record, and that the proscription of medication is, in fact, treatment. Moreover, there are a number of records indicating that the OxyContin was prescribed for back pain (e.g., Tr. 188). The court agrees with Villella that the Recommended Ruling incorrectly characterized Dr. Perlin's ongoing prescription of medication as a "lack of treatment." Consequently, the objection is sustained, and the court does not adopt that characterization.

11.  Villella has previously made the argument that his case should be remanded to the ALJ because the ALJ failed to obtain the records of a Dr. Joseph Guarnaccia. In support of this contention, Villella notes that page 28 of the Record, a denial notice sent by the Administration to Villella, states that the Administration received a report from Dr. Guarnaccia on June 18, 2004. The Record, however, contains no documents from Dr. Guarnaccia. Instead, it contains a report from a Dr. David Weisman (Tr. 114-116), typed on June 17, 2004, for an examination that took place on June 16, 2004.

In response to Villella's contention, the Magistrate Judge concluded that the denial notice erroneously listed Dr. Guarnaccia in place of Dr. Weisman. Specifically, the Recommended Ruling states that, other than the lone appearance of Dr. Guarnaccia's name on the denial notice, "[t]here is no indication in the Record that plaintiff underwent two consultative examinations at about the same time." RR at 22. Further, the Magistrate Judge found that because Villella has not shown that he underwent two consultative examinations, his argument that the ALJ failed to consider all medical records is without merit. This court agrees. The objection is overruled.

12.  The Recommended Ruling notes that, "Plaintiff states that hospital records

show elevated test results [for liver function], but only cites records after plaintiff's period of insurability ended." RR at 23-24. Villella was insured for DIB through December 31, 2005. Tr. 19-20. He contends that the Recommended Ruling is erroneous because two documents in the Record, Tr. 339 and Tr. 410, show elevated liver function test results prior to December 31, 2005. The court agrees with Villella that Tr. 339 and 410 show elevated test results prior to December 31, 2005. Therefore, the objection is sustained, and the court does not adopt the Recommended Ruling's statement that Villella "only cites records [showing elevated tests for liver function] after [his] period of insurability ended." RR at 23-24.

13. The Recommended Ruling states that, "The Record contains no medical evidence of continued psychological symptoms after plaintiff left the [detoxification] program and resumed taking his narcotic pain medication." RR at 25. Consequently, Villella claims that the Recommended Ruling errs by minimizing his mental illness. Objection at 8. Specifically, Villella argues that the Administrative Record "contains numerous descriptions, throughout the entire period encompassed by the Record, of symptoms of mental illness such as depression, anxiety, suicidal ideation, and many others." Id. Many of the documents Villella cites, however, are either from the detoxification program (e.g., Tr. 215, 218, 220, 221, 227, 293, 302, 305, 307, 308, 309), before the detoxification program (e.g., Tr. 204, 206, 207), or are not medical records at all (e.g., 135, 137, 140). There are medical records from after the detoxification program that mention symptoms often associated with some mental illnesses, such as sleeplessness (Tr. 127), but there are no medical records that show such symptoms were either continuing, or the result of a psychological condition. Consequently, this

allegation of error is without merit, and the objection is overruled.

14.   Villella's fourteenth allegation of error is a repetition of his fourth, and is likewise irrelevant.   The objection is overruled.

15.   The Recommended Ruling states, "Again, there are no records from plaintiff's treating physician showing that he was treating plaintiff for severe anxiety." RR. at 25-26.   Villella contends that there are numerous records showing his treatment by prescriptions for Diazepam, Temazepam, Lorazepam, and Ambien.   Villella focuses specifically on the "treatment" aspect of these prescriptions, stating emphatically that "[p]rescribing medications is treatment" (emphasis in the original).   Objection at 9.   This argument misses the point.   The Recommended Ruling was highlighting the fact that the Record contains no documents in which Dr. Perlin diagnoses Villella with any mental illness or psychological condition.   Villella is correct that many documents list a series of benzodiazepines he was taking, but he has not cited any document that contains Dr. Perlin's specific reasons for prescribing these medications.   Thus, the Recommended Ruling's statement that, "there are no records from plaintiff's treating physician showing that he was treating plaintiff for severe anxiety" is not erroneous. The objection is overruled.

16.   The Recommended Ruling states, "[there is] no reference of any complaints of anxiety . . . in the treatment notes."   RR at 26.   Villella claims this is erroneous because "there is a diagnosis of Anxiety Disorder with Panic Attacks."   Objection at 10. In support of this contention, Villella cites four documents, Tr. 172, 313, 415, and 519. None of these documents, however, contain any diagnosis of anxiety.   Where anxiety is referenced in these documents, it is either noted as a "prior psych problem" (Tr. 415), in

a "Past Medical History" narrative (Tr. 519), as part of an interview tool (Tr. 313) where the interviewer also noted that Villella's affect was "flat" and "irritable," or in a context that is unclear from the Record due to illegibility (Tr. 172).  Villella further argues that "there are a number of references in the Administrative Record to Mr. Villella's anxiety." Objection at 10.  The records he cites, however, contain references to anxiety similar to those listed above.  Consequently, this allegation of error is without merit.  The objection is overruled.

17.  The Recommended Ruling states, "[there is] no reference of any complaints of . . . depression in the treatment notes."  RR at 26.  Villella alleges that "there are numerous references in the Administrative Record to [his] depression," and cites a number of documents in support.  With the exception of Tr. 114, all the documents Villella cited relate to his January 2004 detox at Norwalk Hospital.  As previously noted, Villella signed himself out of the program against medical advice after he was told he would not be given any pain medication while in the detox unit.  The only mention of depression on page 114 of the Record is that Villella said he had no plans to go on Interferon (a treatment for hepatitis) because he was worried about depression.  Tr. 114.  Consequently, while the Recommended Ruling may have overstated the absolute absence of complaints of depression, it was correct in that there are no complaints of depression outside of the January 2004 detox, and that there is good reason to question the credibility of statements made by Villella during the course of the detox program.  The objection is overruled.

18.  Villella's eighteenth allegation of error is a repetition of his fifteenth, and is likewise without merit.  The objection is overruled.

19.  The Recommended Ruling states, "The Record contains no evidence of the reason for prescribing nitroglycerine."  RR at 27.  Villella contends that, "there are dozens of references throughout the Administrative Record to abnormal EKGs, showing the presence of cardiac disease."  Objection at 11.  The court agrees that there is medical evidence in the Record indicating the presence of cardiac disease, namely a first degree AV block (e.g., Tr. 171, 174, 177).  The Recommended Ruling is correct, however, that the Record lacks any document in which Dr. Perlin prescribes nitroglycerine for this condition.

Further, there is no evidence in the Record that Villella's heart condition is debilitating.  RR at 27.  The vast majority of Dr. Perlin's references to Villella's heart indicate a normality, and most of Villella's complaints of chest pain at area hospitals were determined to be gastroesophageal reflux disease (GERD).  Thus, this allegation of error is without merit.  The objection is overruled.

20.  The Recommended Ruling states, "the Record contains no . . . records from plaintiff's treating physician regarding treatment for a cardiac condition."  RR at 27.  Villella argues that because Dr. Perlin is listed as the treating physician on the hospital records from Villella's numerous visits to area ERs, these hospital records must be considered records from his treating physician.  This argument is unpersuasive.  There is no evidence Dr. Perlin ever examined or treated Villella at any of Villella's brief hospital visits, and in fact, on numerous occasions emergency department staff did not treat Villella, but rather referred him to his primary physician.  There are documents in the Record indicating that Villella was taking nitroglycerine and other medications frequently prescribed to control blood pressure, but there is no record from Dr. Perlin

indicating when he began prescribing these medications or for what specific condition or conditions they were prescribed.  Consequently, this allegation of error is without merit.  The objection is overruled.

21.  Villella's twenty-first allegation of error is a repetition of his seventh, and is likewise without merit.  The objection is overruled.

22.  The Recommended Ruling states, "the ALJ's finding of no evidence of follow-up treatment for radiculopathy or carpal tunnel syndrome is supported by the Record."  RR at 28.  Villella again argues that Dr. Perlin's prescription of narcotic pain relievers and anti-inflammatories is, itself, follow-up treatment.  The court would agree with Villella if it were clear from the Record that Dr. Perlin prescribed the medication for radiculopathy or carpal tunnel syndrome.  Villella has not pointed to any evidence in the Record, however, that supports such a finding.  As a result, this allegation is without merit, and the objection is overruled.

23.  The Recommended Ruling notes that, "The ALJ did not give controlling weight to Dr. Perlin's opinion because his opinion was not supported by the meager treatment records."  RR at 30.  Villella objects to the Magistrate Judge's characterization of the treatment records as "meager."  Objection at 12.  He notes that Dr. Perlin provided 71 pages of records, and that the Record contains several hundred pages of hospital records.  Id.  As previously discussed, however, the hospital records are not Dr. Perlin's records.  Moreover, while Dr. Perlin may have provided 71 pages of records, these records contain little information that is helpful in the context of a Social Security disability determination.  Therefore it is not error to call the treatment records "meager."  The characterization refers to the quality of the information provided, not

simply the quantity of documents.  This allegation of error is without merit, and the objection is overruled.

24.  Villella's twenty-fourth allegation of error is a repetition of his tenth, and the court likewise agrees that the Recommended Ruling is erroneous.  Consequently, the objection is sustained, and the court does not adopt the characterization of Dr. Perlin's ongoing prescription of medication as a "lack of treatment."

B.     Alleged Legal Errors in the Recommended Ruling

Villella alleges that the Recommended Ruling has "usurped the role of the ALJ." Objection at 13.  Specifically, he lists six areas in which he believes the Recommended Ruling commits legal error by stating findings or conclusions the ALJ did not state, or ascribing to the ALJ reasoning which is not identified in the ALJ's decision.  The six areas are: 1) missing evidence; 2) cardiac disease; 3) back ailment; 4) hepatitis; 5) pain; and 6) the treating physician rule.  They will be addressed separately.

1.  Villella's objection concerning missing evidence is based on his allegation of factual error concerning a possible report from Dr. Guarnaccia.  As discussed previously, this allegation is without merit.  Thus, the alleged legal error based on the faulty allegation of factual error is likewise without merit.  The objection is overruled.

2.  With regard to cardiac disease, Villella alleges that, "the Recommended Ruling is approving the ALJ's denial of Villella's applications on grounds other than those articulated by the ALJ . . . ."  Objection at 15.  This allegation is based on Villella's opinion that, "[t]he Recommended Ruling . . . believes that Villella has no cardiac disease at all . . . ."  Objection at 14.  This statement, however, reveals a fundamental misreading of the Recommended Ruling.  In the Recommended Ruling, the Magistrate

Judge highlighted important absences from the Record, e.g., "the Record contains no evidence of the reason for prescribing nitroglycerine" (RR at 27); "there are no records from plaintiff's treating physician regarding treatment for a cardiac condition" (RR at 27); "[a]bsent any medical evidence showing the existence of a cardiac condition during the relevant time period that prevents plaintiff from working . . . " (RR at 28). The Recommended Ruling never concludes that Villella has no cardiac disease at all, as Villella now argues. Rather, it concludes that there is not enough evidence to support a conclusion that, during the relevant period, Villella had a cardiac condition that kept him from working. Consequently, his allegation that the Recommended Ruling approves the ALJ's denial of Villella's applications on grounds other than those articulated by the ALJ lacks merit. The objection is overruled.

3. Villella alleges that, with regard to his back ailment, the Recommended Ruling denies his application on grounds other than those articulated by the ALJ. Objection at 15. He bases this allegation on the belief that, "[t]he Recommended Ruling . . . believes that [he] does not have a back ailment . . . ." Id. This belief is premised on certain statements made in the Recommended Ruling concerning Dr. Perlin's diagnosis and treatment of Villella's back ailment. As with the allegation regarding cardiac disease, however, Villella misreads the Recommended Ruling. For example, the Recommended Ruling states, "no medical records support [Dr. Perlin's] diagnosis of spinal stenosis." Contrary to Villella's opinion, this is not a judgment that Villella has no back ailment. Rather, it is an explanation that Dr. Perlin's diagnosis is not supported by evidence in the Record. Thus, Villella's allegation of legal error concerning the Recommended Ruling's treatment of the back ailment issue is without merit. The

objection is overruled.

4.  Villella alleges that, with regard to his hepatitis diagnosis, the Recommended Ruling ascribes reasoning to the ALJ which is not identified in the ALJ's decision. Objection at 16.  He bases this allegation on the belief that, "[t]he Recommended Ruling . . . believes that [he] does not have hepatitis C . . . ."  Objection at 15.  This belief is premised on certain statements made in the Recommended Ruling concerning documents in the Record that show the symptoms of hepatitis.  Like the two previous objections, however, Villella again misreads the Recommended Ruling.

The Recommended Ruling states, "No treatment records from Dr. Perlin, plaintiff's treating physician, show elevated readings during the relevant time period." RR at 24.  Contrary to Villella's opinion, this is not a judgment that Villella does not have hepatitis C.  Rather, it is a description of the absence of certain documents from the Record.  Thus, Villella's allegation of legal error concerning the Recommended Ruling's treatment of his hepatitis is without merit.  The objection is overruled.

5.  With respect to the pain caused by his ailments, Villella makes two objections to the Recommended Ruling.  First, he argues that the Recommended Ruling uses the incorrect burden of proof standard for pain.  Second, Villella argues that the Recommended Ruling reaches findings and conclusions not identified in the ALJ's decision, and decides his claims based on reasons other than those articulated by the ALJ.  These arguments will be addressed separately.

The Recommended Ruling states, "Absent evidence of an impairment supporting the complaints of pain, the ALJ did not fail to acknowledge the diagnosis of plaintiff's various illnesses.  The court concludes that the ALJ's finding that the Record lacks

evidence of plaintiff's claim of chronic severe back pain is supported by substantial evidence." RR at 21. Villella argues that these sentences constitute legal error because the incorrect standard is articulated. Specifically, Villella cites a number of cases for the proposition that he is not required to corroborate by objective evidence the degree of pain he suffers, but only that he has an illness capable of causing pain. Objection at 16. After such an impairment has been identified, Villella argues, "the intensity and persistence of the claimant's pain are evaluated based on all available evidence." Gonzalez v. Apfel, 23 F. Supp. 2d 179, 191 (D. Conn. 1998).

Villella is correct that the Recommended Ruling's analysis on page 21 is flawed. As Villella points out, the ALJ found that his history of hepatitis C, cardiac artery disease, chronic back pain, and opioid dependence are considered "severe" ailments based on Administration regulations. Tr. 24. However, in the subsequent steps of the disability determination analysis, the ALJ found that, despite their classification as "severe," Villella's ailments do not prevent him from performing his past relevant work. In other words, the ALJ acknowledged the diagnoses of Villella's various illnesses, but found that the Record lacked sufficient evidence to support the finding that these illnesses were debilitating. Thus, the Recommended Ruling's statement that, "[a]bsent evidence of an impairment supporting the complaints of pain, the ALJ did not fail to acknowledge the diagnosis of plaintiff's various illnesses," is incorrect. RR at 21. The objection is sustained, and the court does not adopt this analysis.

As for Villella's allegation that, with respect to chronic back pain, the Recommended Ruling reaches findings and conclusions not identified in the ALJ's decision, and decides Villella's claims based on reasons other than those articulated by

the ALJ, the court agrees with Villella.  It appears from the referenced sentence that the

Magistrate Judge was under the impression that the ALJ had not recognized Villella's

chronic back pain.  As discussed above, however, the ALJ specifically found that Villella

had chronic back pain, and that that pain was "severe," but that it did not prevent him

from performing his past relevant work.  Tr. 24.  Therefore, the objection is sustained,

and the court does not adopt the Recommended Ruling's position.

6.   Villella alleges that the Recommended Ruling made an error of law in

concluding that Dr. Perlin's opinion regarding Villella's disability was not entitled to

controlling weight.  Objection at 17-20.  Specifically, he argues that, under the "treating

physician rule," 20 C.F.R. § 404.1527, Dr. Perlin's opinion is entitled to controlling

weight because it is "well supported by hundreds of pages of clinical findings and

objective tests, and [is] not contradicted by any doctor who has treated Villella on a

continuing basis."  Objection at 18.

The treating physician rule is well established.   "SSA regulations advise

claimants that, 'a treating source's opinion on the issue(s) of the nature and severity of

your impairment(s)' will be given 'controlling weight' if the opinion is 'well supported by

medically acceptable clinical and laboratory diagnostic techniques and is not

inconsistent with the other substantial evidence in your case record.'"  Green-Younger

v. Barnhart, 335 F.3d 99, 106 (2d Cir. 2003) (quoting 20 C.F.R. § 404.1527(d)(2)).  For

the rule to apply, however, the treating physician's opinion must be well supported and

not inconsistent with other substantial evidence in the Record.  Id.

In the present case, neither of the conditions for the application of the treating

physician rule are met.  That is, Dr. Perlin's opinion is not well supported, nor is it not

inconsistent with the other substantial evidence in the Record.

As the ALJ has noted, Dr. Perlin has provided little evidence to support his assessment of Villella's impairments. Despite having seen Villella semi-regularly over a number of years for back pain, carpal tunnel syndrome, cardiac disease, and hepatitis, Dr. Perlin provides no x-rays or imagining studies, few EKGs, and a limited number of blood test results. Furthermore, at various times during the relevant period, Dr. Perlin described Villella's hepatitis viral load as low, his LFT's as normal, his back pain as mild, and his heart rhythm as regular. There are also opinions from two other physicians – Dr. Malone and Dr. Weisman – directly contradicting Dr. Perlin's opinion. Consequently, the ALJ and the Magistrate Judge did not commit an error of law in determining that, in this case, the treating physician rule does not require that controlling weight be given to Dr. Perlin's opinion.

C.    Substantial Evidence Determination

Despite the foregoing lengthy discussion of Villella's objections to the Recommended Ruling, the ultimate analysis in this case is quite straightforward. This court must decide: 1) whether the ALJ made an error of law; and 2) whether the ALJ's decision is supported by substantial evidence. Under this standard of review, absent an error of law, this court must uphold the ALJ's decision if it is supported by substantial evidence, even if the court might have ruled differently. See Eastman v. Barnhart, 241 F. Supp. 2d 160, 168 (D. Conn. 2003).

Despite Villella's protestations, the ALJ has made no error of law. To the extent the Recommended Ruling contains faulty legal analysis or incorrect recitations of the Record, those errors are discussed herein and are not adopted by the court. The only

remaining question, then, is whether the ALJ's determination that Villella has the residual functioning capacity to perform his past relevant work is supported by substantial evidence. The court concludes that it is so supported.

Normally, the opinion of an applicant's treating physician is given controlling weight. In this case, however, the ALJ states that she gives Dr. Perlin's final RFC assessment very little weight because it is not supported by the treatment records. Tr. 22. Thus, the ALJ considered all the evidence in the Record in adjudicating Villella's disability. This includes Villella's application, in which he states that he could fold clothes, vacuum, and sweep; walk, drive, and ride in a car; go out alone; shop without help; pay bills; count change; read; and go to tag sales. Tr. 89-91. It includes numerous records in which Dr. Perlin describes Villella's electrocardiograms as "normal," and his heart rhythm as "regular." See, e.g., Tr. 255. It includes a record in which Dr. Perlin characterizes Villella's back pain as "mild." Tr. 131. It includes Dr. Malone's assessment that Villella could occasionally lift and carry 50 pounds; could frequently lift and carry 25 pounds; and could stand, walk, and sit for about six hours in an eight-hour day. Tr. 161. It includes Dr. Weisman's conclusion that Villella has no cardiac dysfunction and that his liver is "doing very well." Tr. 114-116.

Alone, none of these facts may rise above a "mere scintilla" of evidence. Richardson v. Perales, 402 U.S. 389, 401 (1971) (internal quotation and citation omitted). Together, however, they constitute substantial evidence, meaning a reasonable mind might accept them as adequate to support the conclusion that Villella could sustain employment as a case worker. See id. Thus, the ALJ's decision is supported by the Record, and Villella's Motion to Vacate must be denied.

**V.     CONCLUSION**

For the reasons discussed herein, and based on a review of the Magistrate Judge's Recommended Ruling [Doc. No. 23], that Ruling is **AFFIRMED**, **ADOPTED**, and **RATIFIED**, in part.  Accordingly, the plaintiff's Objections to the Magistrate Judge's Recommended Ruling [Doc. No. 28] are **OVERRULED**, in part, and **SUSTAINED**, in part.  Villella's Motion to Reverse [Doc. No. 15] is **DENIED**, and the Commissioner's Motion to Affirm [Doc. No. 19] is **GRANTED**.  Defendant's Motion to Strike [Doc. No. 32] is **DENIED AS MOOT**.  Judgment shall enter for the defendant, and the Clerk is directed to close the case.

**SO ORDERED**.

Dated this 21st day of November, 2008, at Bridgeport, Connecticut.


 /s/ Janet C. Hall
Janet C. Hall
United States District Judge